UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| JAMES C. METCALF, | ) | No. CV-05-243-CI |
| | ) | |
|        Plaintiff, | ) | ORDER DENYING DEFENDANTS' |
| | ) | MOTION FOR SUMMARY JUDGMENT |
| v. | ) | DISMISSAL AND FOR QUALIFIED |
| | ) | IMMUNITY; GRANTING |
| JERRY BRADY, DICK COLLINS, LT. | ) | DEFENDANTS' MOTION TO |
| MIKE ROHRSHEIB, SGT. SHERYL | ) | DISMISS CLAIMS UNDER *MONELL*. |
| COOK, | ) | |
| | ) | |
|        Defendants. | ) | |

BEFORE THE COURT is Defendants' Motion for Summary Judgment dismissal, noted for hearing without oral argument on May 5, 2006. (Ct. Rec. 36.) Plaintiff, a pretrial detainee at the Spokane County Jail, is proceeding pro se; Spokane County Deputy Prosecutor Robert B. Binger represents Defendants. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 16.) Plaintiff has been advised of summary judgment requirements under *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (Ct. Rec. 26) and has responded to the Motion.

On October 31, 2005, Plaintiff filed an Amended Complaint for relief under 42 U.S.C. § 1983, alleging a violation of due process based on extended stays in segregation without notice and an opportunity to be heard. (Ct. Rec. 10.) Plaintiff alleges on May 26, 2004, officers rushed into his cell, strip-searched him then

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT DISMISSAL AND FOR QUALIFIED IMMUNITY; GRANTING DEFENDANTS' MOTION TO DISMISS CLAIMS UNDER *MONELL* - 1

1  escorted him to the segregation unit.    Plaintiff states he was

2  advised he would remain in segregation on two-man cuff status for

3  the duration of his stay for threatening officers.    Plaintiff

4  alleges he did not receive written notice or reasons justifying his

5  transfer to segregation despite repeated requests for such

6  information.    He alleges Defendants Collins and Brady refused to

7  grant him an opportunity to be heard.  (Ct. Rec. 10, att. at 35.)

8       On August 25, 2004, after 90 days in segregation, Plaintiff was

9  returned to the general population.    Following a request under RCW

10 42.17, Plaintiff received copies of incident reports by officers

11 Hughes and Lopez regarding the May 26 incident.    Those reports noted

12 the following:

13       On 5-26-04 at 1535 I was working in 1-west. Sgt. Hughes
         told myself and Officer Hooper we were to move Metcalf to
14       6-east.  Officer Hooper and I went to 4-east and entered
         Metcalf's cell.  I placed cuffs on Metcalf and escorted
15       him to 6-east, cell 35, with Officer Hooper.  Metcalf was
         placed in his cell.  I then took the cuffs off and search
16       him. (nothing found.)   I then returned to my normal
         duties.  Lopez 1315.
17
18 (Ct. Rec. 10, att. at 23.)  An additional report stated:

19       On 05-26-04 at about 1100 hours I received information
         from an outside source that Metcalf was threatening to
20       harm Officers Purcell, Elam, and Skinner.  I was also
         advised that Metcalf had threatened harm to his roommate
21       on 4E, and that there was razor blades in the cell
         fashioned into a weapon.

22       I had Officer Lopez, and Hooper shakedown Metcalf's cell.
         During the search Metcalf was searched, and escorted to 6-
23       E.  There was several razor blades found in the cell but
         none of them appeared to be fashioned into a weapon but
24       based on the information received reference the threats
         about the three officers I had Metcalf housed
25       administratively on 6E, and placed on a handcuffed two man
         escort.  J. Hughes.
26
27 (Ct. Rec. 10, att. at 24.)

28
   ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT DISMISSAL AND
   FOR QUALIFIED IMMUNITY; GRANTING DEFENDANTS' MOTION TO DISMISS
   CLAIMS UNDER *MONELL*  - 2

Plaintiff alleges his cell mate was the source of the accusations. Additionally, he asserts all three of these accusations, if true, would support major infractions. (Ct. Rec. 10, att. at 32.) Plaintiff also notes no razor weapon was found. Plaintiff alleges his segregation was ordered by Defendants Cook and Rohrsheib and they refused him an opportunity to defend. Plaintiff was released from segregation on August 23, 2004.

On October 25, 2004, Plaintiff alleges he again was handcuffed and escorted to segregation. He was advised by Defendant Cook that he would remain in segregation on two-man cuff status for threatening officers. On November 5, 2004, Plaintiff alleges he was escorted to a scheduled court appearance in waist chains. The trial judge questioned him about an e-mail sent from Sgt. Delzer to the judge. Plaintiff denied any knowledge of it and that the information therein was false. The waist chains were removed and court proceeded. Plaintiff alleges he remained in segregation on two man cuff status until June 16, 2005. Following a request under the Public Disclosure Act, RCW 42.17 (Ct. Rec. 10, att. at 29) and the drafting of a civil rights complaint that he sent to the jail law library to be copied, Plaintiff was advised by a classifications officer he would no longer be subject to segregation.

Following his legal action, Plaintiff received a copy of an incident report that prompted the October transfer. Plaintiff contends the transfer was based on allegations made by an unidentified third party as reflected in the e-mail from Sgt. Delzer to the trial judge stating the following:

> Your Honor, James Metcalf is scheduled to appear before
> you at 2:00 p.m. this afternoon. We currently house him

1    in our maximum-security unit. He is on a two-man handcuff
2    officer escort anytime he is out of his cell and ordered
     by Captain Collins to be a three officers escort when
3    Metcalf leaves the confines of the secure portion of the
     jail. Jail administrators have received information that
4    Metcalf is an extreme escape risk or will do anything
     necessary, including law enforcement assisted suicide, to
5    prevent him in returning to prison. I am requesting to
     have Metcalf brought to court in waist-chains, and remain
6    cuffed during this motion.

7    (Ct. Rec. 10, att. at 22.)  Plaintiff asserts under penalty of

8    perjury, he was never placed on suicide watch, was not assessed by

9    a mental health professional, was allowed to keep his razors and

10   continued to order new ones from the store. He further contends he

11   has never spent time in prison so could not "return" to prison.

12   Finally, he contends there is no evidence to support the allegation

13   he was an escape risk. (Ct. Rec. 10.)

14       Plaintiff alleges his transfer to segregation on the two

15   occasions described was in violation of his Fifth Amendment right to

16   due process and Sixth Amendment right to confront witnesses and

17   receive a fair trial before being punished. Additionally, spending

18   the extended time in segregation near other inmates who were

19   suicidal subjected Plaintiff to mental and emotional distress in

20   violation of his Fifth and Fourteenth Amendment rights.

21                          **SUMMARY JUDGMENT**

22       FED. R. CIV. P. 56(c) states a party is entitled to summary

23   judgment in its favor, "if the pleadings, depositions, answers to

24   interrogatories, and admissions on file, together with the

25   affidavits, if any, show that there is no genuine issue as to any

26   material fact and that the moving party is entitled to judgment as

27   a matter of law." *See also Celotex Corp. v. Catrett*, 477 U.S. 317

28

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT DISMISSAL AND
FOR QUALIFIED IMMUNITY; GRANTING DEFENDANTS' MOTION TO DISMISS
CLAIMS UNDER *MONELL*  - 4

(1986).  Once the moving party has carried the burden under Rule 56, the party opposing the motion must do more than simply show there is "some metaphysical doubt" as to the material facts. *Matsushita Electric Industrial Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The party opposing the motion must present facts in evidentiary form and cannot merely rest on the pleadings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Affidavits, depositions, answers to interrogatories and admissions are sufficient to raise a material question of fact. *Celotex*, 477 U.S. at 324.  Genuine issues are not raised by mere conclusory or speculative allegations. *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990).  The court will examine the direct and circumstantial proof offered by the nonmoving party and the permissible inferences which may be drawn from such evidence.   An expert opinion may defeat summary judgment if it appears the expert is competent to give an opinion and the factual basis for the opinion is disclosed. *Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1435 (9th Cir. 1995).  A party cannot defeat a summary judgment motion by drawing strength from the weakness of the other party's argument or by showing "that it will discredit the moving party's evidence at trial and proceed in the hope that something can be developed at trial in the way of evidence to support its claim." *T.W. Electric Service Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987); *see also, Triton Energy Corp v. Square D. Company*, 68 F.3d 1216 (9th Cir. 1995).

### 42 U.S.C. § 1983

To demonstrate a claim under 42 U.S.C. § 1983, Plaintiff must

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT DISMISSAL AND FOR QUALIFIED IMMUNITY; GRANTING DEFENDANTS' MOTION TO DISMISS CLAIMS UNDER *MONELL* - 5

allege and prove (1) the violation of a right secured by the Constitution and laws of the United States, and (2) the deprivation was committed by a person acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988). A person subjects another to a deprivation of a constitutional right when committing an affirmative act, participating in another's affirmative act, or omitting to perform an act which is legally required. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). To hold a defendant liable for damages, the wrongdoer personally must cause the violation. *Leer*, 844 F.2d at 633. There is no respondeat superior liability. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Thus, a supervisor is liable under § 1983 only if he/she "participated in or directed the violation, or knew of the violation and failed to prevent it." *Id*. If damages are sought, sweeping conclusory allegations against a prison official will not suffice; an inmate must set forth specific facts as to each individual defendant's participation. *Leer*, 844 F.2d at 634.

## ADMINISTRATIVE SEGREGATION

If Plaintiff were a convicted felon, his claim would have no merit under *Sandin v. Connor*, 515 U.S. 472, 485 (1995); *Mitchell v. Dupnik*, 75 F.3d 517, 522 (9th Cir. 1996). However, it is undisputed at all times relevant Plaintiff was a pretrial detainee, charged with first-degree murder and subject to a $1,000,000 bond. (Ct. Rec. 38, ¶ 1.) Thus, the case law relied upon by Defendants, *Farr v. Blodgett*, 810 F.Supp. 1485, (E.D. Wa. 1993) is not dispositive as

that case involved the claims of a convicted defendant in the custody of the Department of Corrections.  "[T]he more protective fourteenth amendment standard applies to conditions of confinement when detainees . . . have not been convicted" of a crime. *Gary H. v. Hegstrom*, 831 F.2d 1430, 1432 (9th Cir. 1987) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)(pretrial detainees)). The Fourteenth Amendment requires the government to do more than provide the "minimal civilized measure of life's necessities," *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) for those detainees.  When an individual is detained on a criminal charge, that individual, unlike a criminal prisoner, "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell*, 441 U.S. at 535; see also *Demery v. Arpaio*, 378 F.3d 1020, 1029 (9th Cir. 2004), *cert. denied*, ___U.S.____, 125 S. Ct. 2961 (2005) ("the Fourteenth Amendment prohibits all punishment of pretrial detainees."). "Pretrial detainees have a substantive due process right against restrictions that amount to punishment." *Id.* at 1045.

A pretrial detainee who is placed in disciplinary segregation as punishment has a right to a due process hearing. *Mitchell v. Dupnik*, 75 F.3d at 524.   However, administrative segregation differs from disciplinary segregation:  "Absent a showing of an express intent to punish on the part of detention facility officials, . . . if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Bell*, 441 U.S. at 538-39.  Thus, this court must distinguish whether the facts here raise a material question of fact

1   as to whether Plaintiff's transfer and placement in segregation

2   involved legitimate penological objectives or the imposition of

3   punishment.

4       In *Mitchell*, 75 F.3d. at 524, a pretrial detainee recovered on

5   a § 1983 claim, contending he was placed unfairly in administrative

6   segregation after being found guilty of jail infractions without a

7   hearing or opportunity to be heard.   The court explained that,

8   unlike a convicted prisoner, a pretrial detainee has a liberty

9   interest in "freedom from disciplinary confinement," such that a

10  pretrial detainee is entitled to a due process hearing before he is

11  punished or "restrained for reasons other than to assure [his]

12  appearance at trial." *Id.* at 524, 525. At the hearing, the detainee

13  is entitled to a meaningful opportunity to defend himself against

14  the charges, and must be allowed to call witnesses in his defense,

15  unless doing so would be "unduly hazardous to institutional safety

16  and correctional concerns." *Id.* at 525.

17      Defendants assert, here, Plaintiff was subjected to

18  administrative segregation, not disciplinary segregation, as

19  authorized by the policies of the Spokane County Jail.  The relevant

20  policy provides:

21          The Jail Commander of Lieutenant may order the
            administrative segregation of any inmate who poses a
22          danger to the health and safety of staff, other inmates,
            or themselves, or who pose a threat to the security of the
23          facility.    An inmate will be informed of the
            administrative segregation decision and the reasons for
24          the decision.

25  Spokane County Jail Policy 2.09.01(15).  (Ct. Rec. 38, ¶ 3.)

26      Defendants proffer facts that on May 26, 2004, information was

27  received from Detective Brian Hamond and inmate Leverette that

28

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT DISMISSAL AND
FOR QUALIFIED IMMUNITY; GRANTING DEFENDANTS' MOTION TO DISMISS
CLAIMS UNDER *MONELL*  - 8

Plaintiff had threatened to harm corrections officers Purcell, Elam, and Skinner. (Ct. Rec. 39, Hughes Aff. at ¶ 3.) On the basis of that information, Plaintiff was transferred to administrative segregation. (Ct. Rec. 39, Hughes Aff. at ¶ 6.) On July 14, Plaintiff's custody status was reassessed and a recommendation was made to continue him in segregation. (Ct. Rec. 41, Cook Aff. at ¶ 7, 8.) Plaintiff continued in segregation until he was returned to the general population on August 23, 2004.

On October 25, 2004, Capt. Collins received information from a confidential informant that Plaintiff was an "extreme escape risk" and that he "would do anything to keep from going to prison." (Ct. Rec. 40, Collins Aff. at ¶ 10.) Taking into account the pending charge (second degree murder), information Plaintiff was a possible suspect in a second homicide, the prior administrative segregation, and reports Plaintiff had threatened his attorneys, Capt. Collins transferred Plaintiff to administrative segregation. (Ct. Rec. 40, Collins Aff. at ¶¶ 10, 12.) Additionally, it was ordered Plaintiff be on a two-man hand cuff escort whenever he was out of his cell and three-man taser escort when he left the jail. (Ct. Rec. 40, Collins Aff. at ¶ 18.) Plaintiff's segregation was reviewed under jail policy on November 10, 2004, January 12, 2005, March 9, 2005, and May 10, 2005; each time, the recommendation was to remain in segregation. Plaintiff was released from segregation on June 16, 2005. (Ct. Rec. 40, Collins Aff. at ¶ 7.)

Defendants have offered no additional reasons or rationale to support continued segregation in either instance, other than the reasons given for the initial placement. Plaintiff avers in sworn

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT DISMISSAL AND FOR QUALIFIED IMMUNITY; GRANTING DEFENDANTS' MOTION TO DISMISS CLAIMS UNDER *MONELL* - 9

1  statements in his Complaint, he was not offered mental health
2  counseling, was permitted to keep razors and new blades in his cell,
3  no razor blade weapon was found in his cell (Ct. Rec. 40, Collins
4  Aff., att. A), and no evidence was proffered to support the
5  allegation he was an escape risk.   (Ct. Rec. 10 at 13.)
6  Additionally, the court notes there is no evidence of a formal
7  security reassessment prior to his release from segregation on
8  either occasion, only the unrecorded observations of jail officials.
9  (Ct. Rec. 48, ¶¶ 44-48.) Based on this record, the court concludes
10 a material question of fact is raised whether the continued
11 segregation (90 days in the first instance, 235 days in the second
12 instance) constituted punishment.    Thus, Defendants' Motion for
13 Summary Judgment dismissal is **DENIED.**

14                          **QUALIFIED IMMUNITY**

15      Defendants maintain they are entitled to qualified immunity,
16 contending Plaintiff has not established they violated any clearly
17 constitutional right.   A state official is entitled to qualified
18 immunity to the extent the conduct at issue "does not violate
19 clearly established statutory or constitutional rights of which a
20 reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S.
21 800, 818 (1982).   In determining whether an official is entitled to
22 qualified immunity, the court must consider whether (1) Plaintiff
23 has identified a specific constitutional right which has been
24 allegedly violated, (2) the right was so clearly established as to
25 alert a reasonable official to its parameters, and (3) a reasonable
26 officer could have believed his or her conduct was lawful. *See also*
27 *Newell v. Sauser*, 79 F.3d 115, 117 (9th Cir. 1996).

28
ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT DISMISSAL AND
FOR QUALIFIED IMMUNITY; GRANTING DEFENDANTS' MOTION TO DISMISS
CLAIMS UNDER *MONELL*  - 10

The inmate bears the initial burden of proving the right was clearly established. *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Further, the right asserted must be "clearly established at the time of the challenged action." *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985). Under this test, a plaintiff must "offer more than general conclusory allegations" correctional officers violated a constitutional right. *Backlund v. Barnhart*, 778 F.2d 1386, 1389 (9th Cir. 1985). Thus, to support a judgment, a plaintiff "must show that the particular facts of his case support a claim of clearly established right." *Id*. However, the absence of any authority directly on point is not fatal to a § 1983 claim. A right is clearly established if the only reasonable conclusion from binding authority was that the disputed right existed. *Sweaney v. Ada County, Idaho*, 119 F.3d 1385 (9th Cir. 1997); *Blueford v. Prunty*, 108 F.3d 251, 255 (9th Cir. 1997). "This is not to say that an official action is protected by qualified immunity unless the very action has previously been held unlawful, but it is to say that in light of the pre-existing law, the unlawfulness must be apparent." *Anderson v. Creighton, supra*, 483 U.S. at 640. If a plaintiff carries the burden of demonstrating a clearly established right, then state officials must prove their conduct was reasonable even though it may have violated federal standards. *Benigni v. City of Hemut,* 879 F.2d 473, 479-480 (9th Cir. 1988).

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT DISMISSAL AND FOR QUALIFIED IMMUNITY; GRANTING DEFENDANTS' MOTION TO DISMISS CLAIMS UNDER *MONELL*  - 11

1    Courts ordinarily look to prior case law to determine whether

2  the "contours of the right" have been defined at an appropriate

3  level of specificity. The existence of a statute "authorizing

4  particular conduct is a factor which militates in favor of the

5  conclusion that a reasonable official would find that conduct

6  constitutional." *Grossman v. City of Portland*, 33 F.3d 1200, 1209

7  (9th Cir. 1994). Thus, a state official who relies on a properly

8  enacted state statute is entitled to qualified immunity unless the

9  statute is obviously or patently unconstitutional or preempted by

10 federal law. *Id.; see also Augustine v. McDonald,* 770 F.2d 1442,

11 1446 (9th Cir. 1985). Here, Defendants argue reliance based solely

12 on jail policy and/or an orientation booklet provided to detainees.

13 (Ct. Rec. 38, ¶¶ 3, 4.) However, those policies, on their face, do

14 not conform to the law enunciated in *Bell v. Wolfish*, and *Mitchell*

15 *v. Dupnik.* Those cases provide clear guidance to Defendants with

16 respect to the issues raised in this claim.

17    The final question, then, is whether Defendants have

18 demonstrated their actions were reasonable in light of this legal

19 background. The court concludes they have not. Pre-existing law

20 was sufficient to provide a "fair warning" that continued placement

21 in administrative segregation for punitive reasons was unlawful.

22 Construing the facts in a light most favorable to Plaintiff, the

23 issue of whether Defendants' actions were reasonable in light of

24 existing case law presents a material question of fact this court is

25 unable to decide as a matter of law.

26                    **RESPONDEAT SUPERIOR**

27    Defendants move to dismiss claims against Defendants Rohrscheib

28

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT DISMISSAL AND
FOR QUALIFIED IMMUNITY; GRANTING DEFENDANTS' MOTION TO DISMISS
CLAIMS UNDER *MONELL* - 12

and Cook in their official capacity.  To the extent such claims are alleged,[1] any liability would lie with the county.  Liability under § 1983 against a municipality is available only when a plaintiff alleges the unconstitutionality of a policy, statute, regulation, or ordinance adopted by county officers. *Monell et al. v. Depart. of Social Services of the City of New York*, 436 U.S. 658, 690 (1978). Plaintiff does not make such allegations.  Thus, Defendants' Motion to dismiss claims against Defendants Rohrscheib and Cook in their official capacity is **GRANTED.**  Accordingly,

    **IT IS ORDERED:**

    1.   Defendants' Motion for Summary Judgment **(Ct. Rec. 36)** is **DENIED.**

    2.   Defendants' Motion for Qualified Immunity **(Ct. Rec. 36)** is **DENIED.**

    3.   Defendants' Motion to dismiss claims against Defendants Rohrscheib and Cook in their official capacities, **(Ct. Rec. 36)** to the extent, if any, alleged, is **GRANTED.**

    4.   The District Court Executive is directed to file this Order and provide a copy to Plaintiff and counsel for Defendants.

    DATED May 23, 2006.


            S/ CYNTHIA IMBROGNO
        UNITED STATES MAGISTRATE JUDGE

---

    [1]Plaintiff's Amended Complaint does not reference in the caption or section III Parties, claims against Defendants in their official capacities. (Ct. Rec. 10.)

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT DISMISSAL AND FOR QUALIFIED IMMUNITY; GRANTING DEFENDANTS' MOTION TO DISMISS CLAIMS UNDER *MONELL*  - 13